Abe PLISCO, Appellant,

v.

UNITED STATES of America, Appellee.

Percy M. MAY, Appellant,

v.

UNITED STATES of America, Appellee.

Norman R. BAKER, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 16488–16490.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 5, 1962.

Decided June 28, 1962.

Petition for Rehearing En Banc Denied En Banc July 30, 1962.

Mr. H. Clifford Allder, Washington, D. C., for appellants.

Mr. Robert L. Waters, Atty. Dept. of Justice of the bar of the Supreme Court of Alabama, pro hac vice, by special leave of court, with whom Asst. Atty. Gen. Louis F. Oberdorfer, Messrs. David C. Acheson, U. S. Atty., Lee A. Jackson and Joseph M. Howard, Attys. Dept. of Justice, were on the brief, for appellee. Mr. Charles T. Duncan, Principal Asst. U. S. Atty., and Mrs. Caroline R. Just, Atty., Dept. of Justice, also entered appearances for appellee.

Before EDGERTON, BAZELON and FAHY, Circuit Judges.

BAZELON, Circuit Judge.

This is a suit by the United States to reduce to judgment a jeopardy assessment resulting from the disallowance by the Commissioner of Internal Revenue of certain losses appellants claimed on their 1948, 1949 and 1950 income tax returns. Appellants were partners in a gambling enterprise. They computed each day's net profit or loss by subtracting the pay-outs and expenses from the day's winnings and recorded the result on their books. The Commissioner rejected the loss day figures, characterizing them as "self-serving," but accepted the daily profit figures as admissions against interest.

■■■ Unable to collect more than a fraction of the assessment by distraint, the Government brought this suit in the District Court to reduce the unpaid portion to judgment before it expired.[1] At trial, the parties stipulated that the Commissioner had made deficiency assessments for the years in question here. Appellants sought to introduce the daily records described above, but they were excluded on the Government's objection. Since assessments are deemed prima facie correct, and since appellants offered no other rebutting evidence, the court rendered judgment for the Government.[2] The taxpayers appealed.

We think the judgment must be affirmed. In reaching that result, we assume without deciding that the taxpayers' records were admissible as past recollections recorded since appellant May testified that he posted the entries daily and that they accurately reflected the day's operations. We also assume that appellants' failure to urge this ground of admissibility below does not bar consideration here.[3]

■■■ But these records do not "clearly reflect income" within the meaning of Int.Rev.Code of 1954 § 446(b). Appellants' daily statements were not supported by memoranda of individual, verifiable transactions.[4] And their records contained no information concerning income and costs which might have enabled the Commissioner to verify the statements by comparing appellants' income-expense ratios with the ratios of similar enterprises. Without such data, the records reflect nothing more than the taxpayers' naked conclusions concerning the

1. An assessment must be collected by levy or by a court proceeding within six years after the assessment is made. Int.Rev. Code of 1954 § 6502, 26 U.S.C.A. § 6502.

   Appellants contend that, since the Government chose to collect this assessment by levying upon their property, § 6502 bars this action because it compels an election of remedies. Authority to bring a civil action to collect taxes is conferred by Int.Rev.Code of 1954 §§ 7401 and 7403. Sections 6331–6344 govern seizure of property for collection of taxes. Nowhere in these sections does it appear that the Government must elect between the two remedies. Moreover, § 6502 was enacted as part of Subchapter A of Chapter 66 which deals solely with time limitations. We conclude that § 6502 limits the period, but not the means, for enforcing an assessment. Cf. United States v. Havner, 21 F.Supp. 985, 988 (S.D.Iowa 1937), reversed on other grounds, 101 F.2d 161 (8th Cir. 1939).

2. Appellants contend that the burden of proving the validity of the assessment was upon the Commissioner, plaintiff below.

   In the Tax Court and in suits for refund, the Commissioner's assessment is deemed prima facie correct. See generally 9 Mertens, Law of Federal Income Taxation § 50.61 (1958); 10 id. §§ 58A.01, 58A.35 (1958); and cases cited therein. The same rule applies when the Commissioner seeks to reduce a jeopardy assessment to judgment. See Becker v. United States, 21 F.2d 1003 (5th Cir. 1927); Crook v. United States, 30 F.2d 917 (5th Cir. 1929); Paschal v. Blieden, 127 F.2d 398 (8th Cir. 1952); 9 Mertens, supra § 49.-218.

3. But see Janes v. Janes, 51 App.D.C. 267, 278 F. 576 (1922).

4. Cf. O'Laughlin v. Helvering, 65 App.D.C. 135, 81 F.2d 269 (1935).

   Our appellants recorded each incoming bet and the bettor's name on a slip of paper, and transferred the information thereon to so-called "20-line sheets" summarizing the day's operations. The slips and 20-line sheets were somewhat analogous to the sales memoranda and daily ledger of an ordinary business. Appellants destroyed them.

net taxable income or loss resulting from each day's operations. The Commissioner was not required to accept them.[5]

The statute provides that "If the method [of accounting] used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the [Commissioner] does clearly reflect income." Int.Rev.Code of 1954, § 446(b). Appellants contend that the Commissioner's reconstruction was arbitrary because he accepted their word as to daily profits but not as to daily losses.[6] We think, however, that since appellants had no incentive to overstate their daily profit figures in order to increase their taxes, the Commissioner could reasonably accept these figures as minima. On the other hand, since appellants did have an incentive to overstate their daily loss figures in order to reduce their taxes, the Commissioner could reasonably reject these figures in the absence of any data which would provide a basis for testing their reasonableness.

Nor can we agree with appellants that Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), requires the Commissioner to make some estimate of allowable losses for the days they allege their operations were unprofitable. In Cohan the Second Circuit directed the Tax Court to estimate the entertainment expenses of a theatrical manager and pro-

ducer even though he had not recorded them. The court reasoned that he must have incurred such expenses and that it would be arbitrary to disallow them altogether. But Cohan kept reliable gross income records. Hence the order of magnitude of the entertainment expenses he incurred could be inferred and a meaningful estimate made. Here there are no reliable figures from which to calculate or extrapolate a reasonable estimate of appellants' losses and expenses. Hence we think Cohan is inapposite.[7]

Appellants might have brought themselves within the rule of the Cohan case had they provided gross income figures. Thus, in Simon, 24 P–H Tax Ct.Mem. 1059 (1955). the Commissioner disallowed the losses of a professional gambler who had recorded each day's gross wagers and pay-outs. The Commissioner argued that since the losses could not be verified, they must be disallowed altogether. But the Tax Court held that it would be arbitrary to assume. that Simon had incurred no losses and estimated them based upon a percentage of the gross bets placed.[8]

Appellants might also have rebutted the Commissioner's computation by reconstructing their own income by the net worth method. Such a reconstruction, not dependent upon adequate business records, is illustrated by the Willis case.[9] Willis kept no records of his seafood distributing business, so the Commissioner

5. Stein, 1962 P–H Tax Ct.Mem.Dec. ¶ 62019; Nellis, 24 P–H Tax Ct.Mem. 142 (1955), affirmed, 232 F.2d 890 (6th Cir. 1956). Showell, 23 T.C. 495 (1954), reversed on other grounds, 238 F.2d 148 (9th Cir. 1956), on remand, 26 P–H Tax Ct.Mem. 85 (1957), reversed on other grounds, 254 F.2d 461 (9th Cir. 1958), on second remand, 29 P–H Tax Ct.Mem. 30 (1960), affirmed, 286 F.2d 245 (9th Cir. 1961); Bickers, 29 P–H Tax Ct.Mem. 491 (1960).

6. Though appellants have the burden of proof, they need not show the amount that should have been assessed. They need only show that the Commissioner's assessment was arbitrary and capricious. Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935).

7. Stein, supra note 5; Nellis, supra note 5. Contra: Showell, supra note 5; Bickers, supra note 5. But see Drews, 25 T.C. 1354 (1956).

8. Accord: Mesi, 25 T.C. 513 (1955), reversed and remanded on other grounds, 242 F.2d 558 (7th Cir. 1957), affirmed on other grounds sub nom. Commissioner of Internal Revenue v. Sullivan, 356 U.S. 27, 78 S.Ct. 512, 2 L.Ed.2d 559 (1958). Semble: Hackerman, 23 P-H Tax Ct. Mem. 484 (1954), affirmed per curiam, 229 F.2d 959 (6th Cir. 1955). See also Delsanter, 28 T.C. 845 (1957), where the Tax Court approved an estimate based upon an extrapolation of gross wagers from verifiable records of wages paid employees of a gambling casino.

9. 26 P–H Tax Ct.Mem. 857 (1957).

reconstructed Willis' income by taking a percentage of his gross shipments. But Willis rebutted the presumption in favor of the Commissioner's assessment by evidence that his standard of living and the debts which he incurred during the period under review were inconsistent with the income the Commissioner attributed to him.[10]

■ Since appellants provided no information which would enable the Commissioner to compute their income on a different basis from the one he chose,[11] we cannot say that he acted arbitrarily.

Affirmed.

FAHY, Circuit Judge (dissenting).

Appellants were partners engaged in operating a gambling enterprise. Deficiency assessments were entered against them for federal income taxes for the years 1948, 1949 and 1950, in the amount of $412,729.87 applicable to Plisco, $309,-740.33 applicable to Baker, and $324,-933.69 applicable to May.[1] With interest the judgments entered on these assessments are, respectively, $614,551.46, $474,397.38, and $497,437.99. There is no satisfactory evidence that these men owe these large sums to the United States, and so I cannot agree to affirm the judgments.

For the years in question each appellant reported as his individual share an amount of income from the partnership, and paid the income tax on the amount reported. As derived from gambling for the three-year period, $56,607.23 was re-

ported by Plisco, $43,261.49 by May and $43,261.49 was attributed to Baker.

It is no doubt true that appellants failed to maintain adequate records; but the cases before us are not for violation of any statute or regulation respecting records,[2] or for violation of the gambling laws. The question is whether appellants owe the United States the amounts of the judgments.

The grounds advanced to support the assessments on which the judgments rest, as I understand the majority opinion, are that the Commissioner assessed deficiencies in amounts which appellants' records revealed as "net wins" for each day, and although these same records indicated "net losses" the Commissioner could disregard all such claimed losses since they were not substantiated by appellants. Since deficiency assessments are deemed to be prima facie correct it is considered that the Government proved its case in the District Court merely by introducing in evidence the assessments arrived at in this manner.

The difficulty with the above is that the assessments thus given controlling effect are based entirely on records which also indicate substantial gambling losses, none of which were taken into account. I think the United States may not thus choose and reject from the same records. The parts chosen have no more trustworthiness than the parts rejected. Cf. Dewey v. Hotchkiss, 30 N.Y. 497, 499–501 (1864); Weaver v. Welsh, 325 Pa. 571, 574–75, 191 A. 3, 6 (1937); Rowan

---

10. Semble: Dean, 24 P-H Tax Ct.Mem. 718 (1955). See also Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

11. "The Commissioner's reconstruction of income will be presumed correct with the burden on the taxpayer to disprove his crude computation." 2 Mertens, Federal Income Taxation § 12.12 at 40 (1961) (citing authorities).

Appellants could also have rebutted the presumption of validity accorded the Commissioner's assessment by the cash expenditures or by the bank deposit method. See generally, 2 Mertens, Federal Income Taxation § 12.12 (1961).

1. The United States, proceeding under distraint warrants, had, in 1952 and 1954, levied upon certain assets of Plisco, realizing $11,984.65, which was credited to his deficiency for 1948. Payments of $40 and $30 were received from May in 1955. No amounts have been obtained from Baker.

2. I note that the Commissioner has imposed negligence penalties against the appellants. These may be levied for failure to maintain adequate records. See Stein, 1962 P-H Tax Ct. Mem. ¶ 62,019; Bickers, 29 P-H Tax Ct. Mem. ¶ 60,083 (1960). And see Int.Rev.Code of 1954, § 6653(a).

v. Chenoweth, 49 W.Va. 287, 292–293, 38 S.E. 544, 546 (1901); Wigmore, Evidence § 2118 (3d ed. 1940). And see Showell v. Commissioner, 238 F.2d 148, 153–155 (9th Cir. 1956) (dissenting opinion).

I also think it is inaccurate to say that the assessments result from the disallowance of alleged gambling losses which were not substantiated. This is not the situation. The assessments result from taking these taxpayers' own records, accepting completely the wins shown thereby and disregarding entirely the losses, except losses accounted for by the taxpayers in reaching net wins. This is to me indeed an unreliable and arbitrary method by which to obtain these judgments. The method shown to have been used destroys the prima facie correctness of the result. The majority opinion itself states the records referred to "do not 'clearly reflect income' within the meaning of Int.Rev.Code of 1954 § 446(b) * * *. The records reflect nothing more than the taxpayers' naked conclusions concerning the next taxable income or loss resulting from each day operations. The Commissioner was not required to accept them." Yet the Commissioner did not disregard them. These very records are the sole basis for the amounts of the assessments. The majority opinion somehow seeks to overcome this difficulty by accepting the wins shown by these unacceptable records, as if they show the income, relying on the theory that appellants had an incentive to reduce their taxes by overstating losses and understating profits. One may agree to the incentive, but its existence wholly fails to establish the accuracy or reasonableness of the income taxed or of the method used to determine it. These "wins" were part and parcel of records showing "losses" and cannot reasonably be considered separately from the complementarily shown "losses."

Moreover, appellant May testified as to the method employed in recording the results of each day's operations, explaining that the figures were transferred from daily sheets to the more condensed summary indicating net wins and losses. The majority opinion assumes that these records were admissible as past recollections recorded, and yet there is no evidence that none of the losses thus shown was incurred. It is not necessary to establish that they occurred as recorded; for Mr. May's testimony, considered with the records, was sufficient to overcome the prima facie correctness of the Commissioner's determinations. The presumption in his favor upon which the judgments rest disappears when competent evidence to the contrary is introduced. Cf. Gersten v. Commissioner, 267 F.2d 195, 199 (9th Cir. 1959); Cullers v. Commissioner, 237 F.2d 611, 614 (8th Cir. 1956); Showell v. Commissioner, supra 238 F.2d at 153–155; 9 Mertens, Law of Federal Income Taxation § 50.71 (1958).

Aside from the foregoing, it seems that the principle of Cohan v. Commissioner, 39 F.2d 540, 543–544 (2d Cir. 1930), is also applicable. The reason advanced by the majority for a contrary position is that appellants failed to produce any reliable figures from which an estimate of losses could be made. Appellants must have sustained some losses and incurred some expense during the three-year period, other than those considered in arriving at net wins. In Bickers, supra note 2, in somewhat similar circumstances, the Tax Court used its "best judgment" in determining wagering losses which had been entirely excluded by the Commissioner for lack of substantiation, and see Drews, 25 T.C. 1354 (1956), where, however, there was testimony, which the Tax Court accepted, that there were some losses. Cf. Stein, supra note 2.

In any event, I would hold that the prima facie correctness of the assessments made by the Commissioner was overcome when the manner in which they were made was disclosed, and also by the testimony of appellant May.