ROBERT KLABACKA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Klabacka v. Commissioner
Docket Nos. 10701-85, 37377-85.
United States Tax Court
T.C. Memo 1987-77; 1987 Tax Ct. Memo LEXIS 73; 53 T.C.M. (CCH) 92; T.C.M. (RIA) 87077; February 9, 1987. Robert Klabacka, pro se. Susan N. Wasko, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: These consolidated cases [1] were assigned *74 pursuant to section 7456(d) (redesignated as section 7443A(b) by the Tax Reform Act of 1986, Pub. L. 99-514, section 1556, 100 Stat. 2755) of the Code [2] and Rules 180, 181, and 183. The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE COUVILLION, Special Trial Judge: Respondent determined deficiencies in petitioner's [3] Federal income tax and additions to tax for 1981 and 1982 as follows: Additions to Tax
Section
Section
Section
Year
Deficiency
6651(a)
6653(a)(1)
6653(a)(2)
1981
$ 5,062.36
$253.12 *
1982
$17,101.00
$3,228.41
*75 After concessions by both parties, the issue for decision is whether petitioner substantiated gambling losses claimed in 1981 and 1982 in the amounts of $10,255 and $35,409, respectively, or in any amount. Respondent conceded the additions to tax for the two years. FINDINGS OF FACT Some of the facts have been stipulated and are so found, which, with the attached exhibits, are incorporated herein by this reference. At the time the petitions were filed, petitioner resided in Henderson, Nevada. Petitioner is a nonpracticing attorney who admitted being a compulsive gambler. Prior to moving to Nevada, he was a personal injury attorney in Madison, Wisconsin. He controls GYGO Corporation (GYGO), a holding company for Diesel Truckdriver Training School, Inc., a private commercial driving school which has operated successfully since 1963. Petitioner's salary from GYGO was $77,960.12 and $95,604.01 for 1981 and 1982, respectively. Petitioner's son, *76 Jerry Klabacka (Jerry), has been president of GYGO since 1977. Three of petitioner's other sons are also employed by GYGO. On his income tax returns for 1981 and 1982, petitioner reported gambling winnings of $10,255 and $35,409, respectively. These amounts represent the total amounts reported on Information Returns (Form 1099) or Statement For Certain Gambling Winnings (Form W-2G). Petitioner did not report winnings which were not required to be reported on either Form 1099 or Form W-2G. Petitioner deducted amounts equal to his reported winnings in each of the years at issue, which respondent disallowed for lack of substantiation. OPINION Section 165(d) provides that losses from wagering transactions shall be allowed only to the extent of gains from such transactions. Petitioner has the burden of proving that his alleged losses were in fact sustained. Stein v. Commissioner,322 F.2d 78 (5th Cir. 1963), affg. a Memorandum Opinion of this Court; Mack v. Commissioner,429 F.2d 182 (6th Cir. 1970), affg. a Memorandum Opinion of this Court; Schooler v. Commissioner,68 T.C. 867, 869 (1977); Welch v. Helvering,290 U.S. 111 (1933); *77 Rule 142(a). The issue is a factual one, to be decided on the basis of all the evidence. Fogel v. Commissioner,237 F.2d 917 (6th Cir. 1956), affg. per curiam a Memorandum Opinion of this Court; Green v. Commissioner,66 T.C. 538, 545 (1976). Petitioner kept no records of his winnings and losses during 1981 and 1982 and admits he had winnings in excess of those reported. In these circumstances, this Court has held that the taxpayer must establish that the losses for a given year exceeded the unreported winnings in order to deduct any such losses. Schooler v. Commissioner,supra.
Petitioner attempted to substantiate his claimed losses using a crude variation of the net worth method often used by respondent to reconstruct income. Petitioner's argument is basically that he was further in debt at the close of each tax year at issue than at the beginning of such year [4] and, since he owned absolutely no assets other than the clothes he wore at trial, it, therefore, followed that the borrowed amounts were lost gambling. Petitioner's evidence consisted of his testimony and that of two of his sons, who basically testified that *78 petitioner is, indeed, a compulsive gambler. Both had seen him win and lose large sums of money, but neither was able to add any certainty to the record regarding total unreported winnings or losses. Petitioner also proffered canceled checks in the amount of $20,000 cashed at the El Cortez, a known gambling establishment. Petitioner's reasoning has been rejected by this Court. The amount a gambler borrows during a given tax year is "simply insufficient evidence to indicate that his losses for the year exceeded his winnings." Schooler v. Commissioner,supra at 870. Furthermore, although we note that petitioner had substantial other income at his disposal, he did not establish that the borrowed amounts were not spent on nondeductible personal expenditures. *79 Section 262. Similarly, we are unable to conclude that the $20,000 of checks cashed at the El Cortez was either lost entirely or not spent on nondeductible personal expenditures. Petitioner claims that the realities of the gambling world make it impossible for compulsive gamblers, such as he, who often wager large sums of money fast and furiously, to maintain the records required by respondent.[5] This argument, however, has been rejected based on the general record keeping requirements imposed on all taxpayers, see sections 1.6001-1(a) and (e), Income Tax Regs., and the record keeping requirements necessary to claim certain other deductions (e.g., charitable, medical, travel, and entertainment). Schooler v. Commissioner,supra at 870-871. In Schooler v. Commissioner,supra, this Court concluded that "[t]here is surely no reason to treat taxpayers * * * who claim to have sustained wagering losses more favorably than other taxpayers, by allowing a deduction for wagering losses when the evidence is vague and inadequate." Schooler v. Commissioner, supra at 871. *80 Finally, although it intuitively follows that petitioner must have sustained some losses given his substantial gambling activity, his total lack of actual documentation or other credible corroborating evidence concerning his gambling activities affords the Court no opportunity to conclude that his losses exceeded his unreported earnings for any of the years in issue or that he sustained any losses which would allow application of the rule of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), where the Court may estimate the amount of a deduction when satisfactory evidence of the alleged expenditure has been made. [6] To apply the Cohan rule, there is a basic requirement that there be sufficient evidence to satisfy the trier that at least the estimate amount allowed was in fact sustained as a loss. Stein v. Commissioner,supra at 83. Petitioner has not provided the Court with sufficient evidence from which an allowance could be made under Cohan.
*81 Respondent's disallowance of petitioner's claimed gambling losses is, therefore, sustained. Decisions will be entered under Rule 155.
Footnotes
1. The case at docket No. 37377-85 was originally filed as a Small Tax Case and docket No. 10701-85 was filed as a regular tax case. Because of the identity of parties and issues, the Court granted a joint motion to remove the small tax case designation in docket No. 37377-85S and to consolidate the cases for trial, briefing, and opinion. ↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. All Rule references are to the Tax Court Fules of Practice and Procedure.↩
3. Petitioner's wife, Lucille M. Klabacka, was named in both notices of deficiency; however, she did not petition the Court. Hereafter, all references to petitioner are to Robert Klabacka. * 50% of the interest due on $1,828.73.↩
4. Petitioner's son Jerry testified that, at the beginning of 1981, petitioner owed GYGO $348,000 and at the end of that year owed $515,000, a difference of $167,000. At the close of 1982, petitioner owed $537,000 to GYGO, a difference of $22,000. We do not find that petitioner, in fact, owed these amounts, rather these figures are set forth merely to illustrate petitioner's attempt to substantiate his losses.↩
5. Petitioner testified, however, to keeping "meticulous records" of his business dealings and of imposing the same high standards upon his business associates. It does not appear, therefore, that some sort of record keeping was beyond petitioner's abilities. See Kalisch v. Commissioner,T.C. Memo. 1986-541↩. Moreover, we note, without ruling on the adequacy thereof, that petitioner has begun keeping daily records of his gambling activities.
6. For cases where the Cohan rule has been applied, see Drews v. Commissioner,25 T.C. 1354 (1956); Delgozzo v. Commissioner,T.C. Memo. 1983-613; Jones v. Commissioner,T.C. Memo. 1981-458; Wolkomir v. Commissioner,T.C. Memo. 1980-344; and Bennett v. Commissioner,T.C. Memo. 1968-71. For cases where the Cohan rule has not been applied, se Plisco v. United States,306 F.2d 784 (D.C. Cir. 1962), cert. denied 371 U.S. 948 (1960); Bershesky v. Commissioner,T.C. Memo. 1983-452; Metas v. Commissioner,T.C. Memo. 1982-36; De Monaco v. Commissioner,T.C. Memo. 1981-17; and Glazer v. Commissioner,T.C. Memo. 1980-337↩.